# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PASSAVANT MEMORIAL HOMES, | CIVIL ACTION |
| Plaintiff, | Case No.: 2:21-cv-284 |
| v. | |
| TEAMSTERS AUTOMOTIVE CHAUFFEURS, PARTS, GARAGE, OFFICE CLERICAL, AIRLINE, HEALTHCARE, PETROLEUM INDUSTRY, PRODUCE, BAKERY AND INDUSTRIAL WORKERS, WITHIN WESTERN PENNSYLVANIA AND JOINT COUNSEL #40, LOCAL UNION NO. 926, affiliated with INTERNATIONAL BROTHERHOOD OF TEAMSTERS, | |
| Defendant. | |

## COMPLAINT AND MOTION TO VACATE ARBITRATION AWARD

### Introduction

1. The Plaintiff and the Defendant are parties to a multi-local Collective Bargaining Agreement ("**CBA**") dated January 1, 2018. A copy of the CBA is attached and incorporated by reference as if fully set forth at length herein as Exhibit "**A**."

2. The matters set forth in this Complaint and Motion apply solely to Local Union 926 as more fully set forth herein.

3. On February 9, 2021, Jane Desimone, Esquire (the "**Arbitrator**") issued an Opinion and Award (the "**Award**") in favor of Defendant and former Passavant employee, Richard Marto ("**Mr. Marto**"), a member of Defendant Local Union No. 926. A copy of the Award is attached and incorporated by referenced as if fully set forth at length herein as Exhibit "**B**."

1

4. The Award failed to draw its essence from the Collective Bargaining Agreement, and deprived Plaintiff, Passavant Memorial Homes ("**Passavant**"), of the right to enforce its policy on terroristic threats.

5. The Award is remarkable in all aspects and should be vacated.

6. Stunningly, the Arbitrator found that it was never in dispute that Mr. Marto told a fellow coworker, Tiffany Cole ("**Ms. Cole**"), "I could shoot you for sending me to this appointment;" and reversed Passavant's zero tolerance policy regarding terroristic threats because she found that Mr. Marto's statement was not intentional and therefore did not violate Passavant's policy.

7. Further, while reversing Plaintiff's imposition of discipline, the Arbitrator, in fact, found that the events which lead to the discipline did, in fact, occur.

8. As a result, the Arbitrator erroneously imposed her own industrial justice, unsupported by the facts (which established "just cause") or the CBA.

9. An excerpt from the Award is highlighted below:

> On Thursday, the Grievant learned that he would be accompanying a consumer to a doctor's appointment that morning. Although he initially believed that the appointment would be brief, upon arriving at the appointment he learned that it was a full medical examination, and that the consumer would not be finished in time for him to attend the mandatory training session. As a result, he missed the training and was also late for his rescheduled shift at Shop and Save.
> The Grievant testified that he was very frustrated by this course of events, as he was worried about both missing the mandatory training and being late to his scheduled shift at Shop and Save. He contacted House Coordinator Tiffany Cole to let her know where he was and what was going on with the consumer's medical appointment. Admitting that he was upset with the situation, the Grievant acknowledged that he vented his frustration to Ms. Cole. He agreed that during the telephone call he made the statement "I could shoot you for sending me to this appointment!"
> Tiffany Cole testified that she was disturbed by the Grievant's statement, which she felt was highly inappropriate. She asserted that she could not see why the Grievant would make such a comment if he did not mean it. She described the comment as a "bolt out of the blue", catching her off-guard, entirely contrary to her prior dealings with the Grievant. It made her frightened to go to her car by herself. She stated that she followed up by texting the Grievant, asking him why he made such a comment.

10. The Award violates public policy and fails to draw its essence from the collective bargaining agreement between Passavant and the Union.

11. In the Arbitrator's own words Mr. Marto's statement is "no longer innocuous due to the numerous incidents of violence in the workplace in more recent times." *See* Ex. B, p. 8.

## Parties, Jurisdiction, and Venue

12. Plaintiff, Passavant Memorial Homes, is a Pennsylvania non-profit corporation with a principal place of business located at 163 Thorn Hill Road, Warrendale, PA 15086.

13. Defendant, International Brotherhood of Teamsters and Teamsters Automotive, Chauffeurs, Parts, Garage, Produce, Bakery and Industrial Workers, within Western Pennsylvania and Joint Council #40, are labor organizations.

14. The Union's local affiliate, Local Union 962, is located at 4240 Steubenville Pike, Pittsburgh, PA 15205.

15. The Union, and its local affiliate, are the exclusive bargaining representatives for certain of Passavant's hourly employees, including Richard Marto.

16. The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 because Passavant's claims arise under the Labor Management Relations Act, 29 U.S.C. § 141, et seq. and specifically, Section 301 of the Act, 29 U.S.C. § 185.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because all of the events complained of occurred in this judicial district.

## Factual Background

**A.   The Collective Bargaining Agreement Provisions.**

18. Passavant and the Union are parties to a Collective Bargaining Agreement ("**CBA**") that is in effect from January 1, 2018 through December 31, 2021. *See* Ex. A.

19. Article IV of the CBA is entitled "Management Rights," and presents the management rights retained by Passavant. *Id.* at pp. 4-5.

20. This section states, "[t]he Company reserves and retains solely and exclusively all of its common law rights to manage its business and facilities." *Id.*

21. This section further states, "[t]he...exclusive rights of management...shall include…its right to…establish and continue policies…for the conduct of business." *Id.*

22. This section further states, that Passavant can "suspend [or] ***discharge for just cause***, or otherwise to take such measures as management may determine to be necessary for the orderly, efficient, and profitable operation of its business…" *Id.*

23. Section 4 of Article IV states, "[t]he parties agree that the existing policies of the company, ***which have been reviewed by a sub-committee of the Union's negotiating committee and accepted by signature***, will remain in full force and effect throughout the life of this Agreement, unless changed by mutual agreement, or unless specifically amended by this Contract…" *Id.* at p. 5 (emphasis added).

**B.   Passavant's Terroristic Threat Policy.**

24. Passavant's policy regarding terroristic threats is entitled "Prohibition of Harassment and Terroristic Threats" (the "**Policy**").

25. The Policy applied to Mr. Marto during his employment. A copy of the Policy is attached and incorporated by reference as if fully set forth at length herein as Exhibit "**C**."

26. The Policy defines terroristic threats as follows:

> <u>Terroristic threats</u> – Any person communicates either directly or indirectly, a threat to commit any crime of violence with intent:
> - to terrorize an employee, volunteer[,] or individual receiving services[,]
> - cause evacuation of a building[,] or
> - cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror.

27. The Policy includes zero tolerance for violence or threats.

28. The Policy includes the statement made by Mr. Marto to Ms. Cole wherein he yelled, "I could shoot you for sending me to this appointment."

**C.   Mr. Marto's Discharge.**

29. Mr. Marto was employed by Passavant as a "Direct Support Provider."

30. On August 1, 2019, Mr. Marto was terminated.

31. On August 6, 2019, Mr. Marto was informed of his termination by letter. A copy of Mr. Marto's termination letter is incorporated by reference as if fully set forth at length herein as Exhibit "**D**."

32. The termination letter stated as follows:

> On Wednesday, July 31, 2019[,] it was reported to Human Resources that you threatened a staff member. Human Resources called and placed you on a suspension. On Thursday August 1, 2019, you came to the Greensburg Office and talked to Sue Weiss the Vice President of Human Resources and admitted to threatening a staff member by stating, "I could shoot you for sending me to this appointment."
>
> Passavant policy states Assault/Terroristic Threats will result in termination. Therefore, your employment with Passavant Memorial Homes Family of Services has been terminated effective August 1, 2019.

33. On August 2, 2019, the Union filed a grievance challenging Mr. Marto's discharge and demanded arbitration.

**D.   The Arbitration Award.**

34. On October 30, 2020, Arbitrator Jane Desimone, Esquire, conducted a hearing regarding Mr. Marto's termination.

35. On February 9, 2021, the Arbitrator issued the Award and mailed it to Passavant and the Union.

36. In the Award, the Arbitrator decided to reduce Mr. Marto's termination to a Letter of Warning. *See* Ex. B p. 9. Such Award is inconsistent with the CBA and the Policies of the Company. Once the Arbitrator found that the offense occurred, the Policy aforesaid required termination of employment.

37. The Award also found that:

   a. On July 31, 2019, Mr. Marto yelled "I could shoot you for sending me to this appointment." at Ms. Cole. *See* Ex. B, p. 6.

   b. "The facts were never in dispute." *Id.*

   c. "Article IV of the CBA provided Passavant with managerial rights in managing its operations and facilities," which included the right to suspend or discharge employees for just cause. *Id.*

   d. That Passavant discharged Mr. Marto for violating the Policy. *Id.* at p. 7.

   e. That Mr. Marto's statement was "no longer innocuous due to the numerous incidents of violence in the workplace in more recent times" – a *per se* violation of public policy. *Id.* at p. 8.

38. The Arbitrator did not discredit Ms. Cole. *Id.* at p. 6.

39. The Arbitrator did not find that Ms. Marto's threat of violence as testified to by Ms. Cole did not happen. *Id.* at p. 6.

40. Rather, the Arbitrator injected her subjective opinion into the Award surrounding Mr. Marto's intent despite the clear language of Passavant's zero tolerance policy. *Id.* at p. 8

### COUNT I – PLAINTIFF v. DEFENDANT

### Violation of Public Policy

41. Plaintiff incorporates the foregoing paragraphs as though the same were fully set forth at length herein.

42. There is a well-defined public policy against workplace threats of violence and favoring workplace safety.

43. The Arbitrator acknowledged the same in her Award by concluding, that Mr. Marto's "words are no longer innocuous due to the numerous incidents of violence in the workplace in more recent times."

44. In reinstating Mr. Marto and reducing his termination to a Letter of Warning the Arbitrator's Award violates public policy and fails to draw its essence from the CBA.

45. The Arbitrator's Award should be vacated under 29 U.S.C. § 185 because it violates well-defined, dominant public policies.

46. The Arbitrator's Award should be vacated under 29 U.S.C. § 185 because the Arbitrator improperly dispensed her own brand of industrial justice and public policy.

## COUNT II – PLAINTIFF v. DEFENDANT

### The Award Fails to Draw its Essence from the Agreement

47. Plaintiff incorporates the foregoing paragraphs as though the same were fully set forth at length herein.

48. The Arbitrator's Award modifies the CBA by failing to give Passavant exclusive right to control and regulate its policies, including its Policy regarding terroristic threats.

49. Further, Section 4 of Article IV of the CBA was expressly agreed to by the Union.

50. Further, the CBA reserves Management Rights, including the authority for Passavant to terminate an employee for just cause, without any intervention from the Arbitrator to the contrary.

51. Accordingly, the Arbitrator's Award fails to draw its essence from the CBA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court vacate Arbitrator Jane Desimone's February 9, 2021 Opinion and Award that reduced Richard Marto's termination to a Letter of Warning, and award such other relief as the Court deems appropriate.

Respectfully Submitted,
**DILLON, MCCANDLESS, KING,**
**COULTER & GRAHAM, L.L.P.**

Dated:     March 1, 2021        By: /s/ Thomas W. King, III
                                                                    Thomas W. King, III
                                                                    PA. I.D. No. 21580
                                                                    tking@dmkcg.com
                                                                    Thomas E. Breth
                                                                    PA. I.D. No. 66350
                                                                    tbreth@dmckg.com
                                                                    Jordan P. Shuber
                                                                    PA. I.D. No. 317823
                                                                    jshuber@dmkcg.com

                                                                   128 West Cunningham Street
                                                                    Butler, PA 16001
                                                                    Phone: 724-283-2200
                                                                    Fax: 724-283-2298

                                                                    *Counsel for Plaintiff, Passavant Memorial Homes*