IN THE MATTER OF ARBITRATION     ]

Between     ]

PASSAVANT MEMORIAL HOMES, INC.     ]

and     ]

INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, LOCAL 926     ]

DECISION IN TERMINATION
CASE

(Rick Marto)

---

**GRIEVANCE:**     The grievance protests the Grievant's discharge as without just cause, in violation of the Agreement.

**AWARD:**     The grievance is sustained. The Grievant's termination is reduced to a Letter of Warning.

**HEARING:**     October 30, 2020

**RECORD CLOSED:**     December 18, 2020

**AWARD DATE:**     February 9, 2021

**ARBITRATOR:**     Jane Desimone, Esq.

## APPEARANCES

Company
Andrea Parenti, Esq.
Susan Weiss, VP of HR
Tiffany Cole, Former House Coor.

Union
Robert E. Eberle, Esq.
Rick Marto, Grievant

Exhibit B

## ADMINISTRATION

By notice dated August 21, 2020, the undersigned arbitrator was notified by the parties of her selection to hear and decide this matter then in dispute between them. Accordingly, a hearing was held in Cranberry, Pennsylvania on October 30, 2020, at which the parties were provided with a full opportunity to present evidence, both written and oral, and to argue their respective positions. At the conclusion of the hearing, the parties requested additional time in which to submit post-hearing briefs. Briefs were received and exchanged by the undersigned on December 18, 2020, at which time the record was closed. This matter is now ready for final disposition.

## GRIEVANCE AND QUESTION TO BE RESOLVED

On August 2, 2019, Teamsters Local 926 (hereafter referred to as the "Union") filed a Grievance Form with Passavant Memorial Homes (hereafter referred to as the "Company" or "Passavant") on behalf of bargaining unit member Rick Marto (hereafter referred to as the "Grievant"). The grievance alleged as follows (Joint Ex. 3):

Detailed description of grievance: Rich was terminated for terroristic threats.

State how you would like to see this issue resolved: Return to work + make whole.

**The issue to be determined is whether the Company had just cause to terminate the Grievant's employment. If not, what shall the remedy be?**

## PERTINENT PROVISIONS OF THE AGREEMENT

The following pertinent provision of the collective bargaining agreement[1] was cited in support of the parties' respective positions (Joint Ex. 1):

### ARTICLE IV
### Management Rights

**Section 1.** The Company reserves and retains solely and exclusively all of its common law rights to manage its business and facilities. The sole and exclusive rights of management which are not abridged by this Agreement shall include, but are not limited to, its right to determine the existence of facts which are the basis of a management decision; to establish and continue policies, practices and procedures for the conduct of business and, from time to time, to change or abolish such policies, practices or procedures; the right to determine and, from time to time, redetermine the number, location, and relocation of its facilities; to determine the number of hours per day or per week operations shall be carried on; to select and determine the number and types of employees required; to assign work to such employees in accordance with the requirements determined by management; to establish and change work schedules and assignments; to transfer, promote, or demote employees,

---

[1] Collective Bargaining Agreement between Passavant Memorial Homes and Teamsters Local 926 and Teamsters Local 261 and Teamsters Local 261 (Delaware), Effective January 1, 2018 through December 31, 2021 (hereafter referred to as the "Agreement").

1

or to layoff, terminate, or otherwise relieve employees for lack of work or other legitimate reasons, to determine the fact of lack of work, to make and enforce reasonable rules for maintenance of discipline; to suspend, discharge for just cause, or otherwise take such measures as management may determine to be necessary for the orderly, efficient, and profitable operation of its business and/or facilities. Management's rights set forth above are limited by the terms and provisions of this Agreement and must be consistent with same.

## FACTUAL BACKGROUND

The Company, Passavant Memorial Homes, is a private nonprofit organization in the business of providing services to individuals with intellectual disabilities, autism, and behavioral health needs. It refers to these individuals as "consumers", for whom it operates community homes throughout the state of Pennsylvania, providing around-the-clock care. As it is responsible for the safety and well-being of vulnerable individuals, the Company is carefully regulated by the Commonwealth of Pennsylvania. The Union represents the staff working at these homes, including Direct Support Providers (DSP). The Company and the Union are parties to a collective bargaining agreement governing the relationship between them and the working conditions of the bargaining unit members.

The Grievant, Rick Marto, was employed as a DSP for ten years, the last eight of which he worked for the Company at various community homes. He initially worked at the Laurel Highlands home for approximately seven years before working at the Partridge home at the time of his termination on August 1, 2019. At that time, he was working a regular schedule of overnight shifts, approximately thirty-four hours per week, with some overtime. He also worked a second full-time job as a meat cutter with a local grocery store, Shop and Save. By letter dated August 6, 2019, the Grievant was informed of his termination. The letter stated in pertinent part as follows (Joint Ex. 2):

> This letter serves as official notification that your employment with Passavant Memorial Homes Family of Services is being terminated due to Assault/Terroristic Threats exhibited by:
>
> -On Wednesday, July 31, 2019 it was reported to Human Resources that you threatened a staff. Human Resources called and placed you on a suspension. On Thursday, August 1, 2019 you came to the Greensburg Office and talked to Sue Weiss the Vice President of Human Resources and admitted to threatening a staff member by stating "I could shoot you for missing the training."
>
> Passavant policy states Assault/Terroristic Threats will result in termination. Therefore, your employment with Passavant Memorial Homes Family of Services has been terminated effective August 1, 2019.

2

Exhibit B

The facts giving rise to the Grievant's termination are not in dispute. On July 31, 2019, he worked his normal shift of Wednesday 8:00 pm to Thursday 10:00 am. Tiffany Cole was working as the House Coordinator, a bargaining unit position serving as the liaison between the house staff and management. Upon reporting for his shift at 8:00 pm, the Grievant learned of a staff training session scheduled for 10:00 am on Thursday. In order to attend the mandatory training he contacted his supervisor at Shop and Save to obtain permission to report late to his meat cutter position that day. Because he would be coming off of his scheduled shift at the Partridge Home, he also obtained permission to arrive late for the training.

On Thursday, the Grievant learned that he would be accompanying a consumer to a doctor's appointment that morning. Although he initially believed that the appointment would be brief, upon arriving at the appointment he learned that it was a full medical examination, and that the consumer would not be finished in time for him to attend the mandatory training session. As a result, he missed the training and was also late for his rescheduled shift at Shop and Save.

The Grievant testified that he was very frustrated by this course of events, as he was worried about both missing the mandatory training and being late to his scheduled shift at Shop and Save. He contacted House Coordinator Tiffany Cole to let her know where he was and what was going on with the consumer's medical appointment. Admitting that he was upset with the situation, the Grievant acknowledged that he vented his frustration to Ms. Cole. He agreed that during the telephone call he made the statement "I could shoot you for sending me to this appointment!"

Tiffany Cole testified that she was disturbed by the Grievant's statement, which she felt was highly inappropriate. She asserted that she could not see why the Grievant would make such a comment if he did not mean it. She described the comment as a "bolt out of the blue", catching her off-guard, entirely contrary to her prior dealings with the Grievant. It made her frightened to go to her car by herself. She stated that she followed up by texting the Grievant, asking him why he made such a comment.

After receiving Ms. Cole's text, the Grievant telephoned her to apologize and explain his actions. He testified that during the ten-minute phone call, he assured Ms. Cole that he did not mean to frighten her and that he only said the statement as figure of speech and as an expression of his frustration. The Grievant denied any intention of hurting Ms. Cole or anyone else. He stated

3

his regret and remorse in making the statement, acknowledging that it is a different world these days where such statements carry more weight than they did in the past. On August 1, 2019, both the Grievant and Ms. Cole provided written statements consistent with their testimony at arbitration.

Susan Weiss has been employed by the Company for twenty years and is currently the Vice President of Human Resources. Ms. Weiss recalled that on July 31, 2019, she received a telephone call from Tiffany Cole, relaying the Grievant's threatening statement. After obtaining a written statement from Ms. Cole, she contacted the local police department, which declined to intervene. After interviewing the Grievant on August 1, 2019, Ms. Weiss concluded that his statement to Ms. Cole constituted a terroristic threat, in violation of the Company's Safety and Security Policy, Prohibition of Harassment and Terroristic Threats (Joint Ex. 7), for which all employees receive training. She noted that the Grievant admitted to making the statement and also that he regretted his actions. Ms. Weiss testified that while she believed the Grievant when he said he did not intend his comment as a threat, she also believed that he violated the Company's policy.

## CONTENTIONS OF THE PARTIES

### Union

The Union contends that the Company did not have just cause to terminate the Grievant's employment. While the Grievant acknowledged from the outset that he made the comment "I could shoot you" to Ms. Cole on July 31, 2019, he also acknowledged that he used very poor judgment. The Union maintains that the circumstances in which he made the statement do not support the termination of a long-term employee. It argues that the Grievant's lack of intent to make a terroristic threat and the overall conversation between the Grievant and Ms. Cole establish that it was not a hostile exchange that would rise to the level of a dischargeable offense.

Emphasizing the Grievant's lack of intent, the Union points to clear evidence that the Grievant was motivated only by frustration. Due to his scheduling difficulties, the Grievant became agitated and expressed this agitation to House Coordinator Tiffany Cole. When he made the statement, he was not demanding or asking that Ms. Cole do anything for him. Rather, his poor choice of words was an after-the-fact expression of his frustration. The Union further points out that the Grievant's conversation with Ms. Cole was not generally a hostile exchange. To the contrary, the comment was made during a short conversation in which Ms. Cole did not acknowledge the comment until afterwards, when she sent the Grievant a text message.

4

Exhibit B

The Union asserts that after the Grievant's phone call, the actions of Ms. Cole and Vice President of Human Resources Susan Weiss did not indicate that they were concerned that the Grievant posed a threat. After communicating with the Grievant by text, Ms. Cole took the phone call from him during which he apologized and expressed regret for his choice of words. Similarly, Ms. Weiss personally met with the Grievant to discuss the matter the next day. The Union also points out that the police declined to get involved in the matter.

The Union acknowledges that the Grievant's comment to Ms. Cole was inappropriate and has no place in conversation between coworkers. However, it maintains that his poor choice of words did not constitute a terroristic threat. In asking for the grievance to be sustained, the Union summarizes this argument in its post-hearing brief as follows:

> The Union agrees with Cole, Marto and the Employer that the statement Marto made has no place in a conversation between co-workers. This is 2020 – everyone has heard multiple stories of people who do engage in terrible acts of violence in the workplace with tragic consequences. Indeed, the Union supports the Employer in its efforts to maintain a safe work environment for everyone. However, this is not a case where an employee made a genuine terroristic threat. Marto used a phrase that years ago had a much less sinister meaning; this is how he intended it in this situation, and truth be told that is how the other persons involved understood it. Moreover, Marto did absolutely nothing else consistent with having made that comment. His conduct surrounding that call and the subsequent call with Cole, as well as his forthrightness in admitting to what he had done, and his immediate expression of remorse, should mitigate the penalty to be imposed. Marto should be sanctioned for his misconduct, but just cause compels a penalty less than discharge. It is within the Arbitrator's authority to reduce the discipline in this case to be proportional to the offense, and the Union requests the Arbitrator to exercise that authority.

## Company

The Company argues that the Grievant's statement to House Coordinator Tiffany Cole – "I could shoot you" – constituted a violation of its Safety and Security policy addressing "Prohibition of Harassment and Terroristic Threats". Established to maintain workplace safety and security, the policy provides that any employee found to have made a terroristic threat is to be terminated from employment. The Company contends that regardless of whether the Grievant actually intended to harm Ms. Cole or could have harmed her, his comment was in violation of the policy that justified his termination.

The Company asserts that the Grievant and the Union posit that the Grievant was somehow justified in making the threat because he was upset due to scheduling problems. It maintains any

5

excuse of the Grievant's actions does not negate the terroristic threat and that Ms. Cole was understandably upset by his comment. In asking that the grievance be denied, the Employer summarizes its position in its post hearing brief as follows:

> In conclusion, it is the position of Passavant Memorial Homes that the grievance filed by Mr. Marto should be dismissed. Passavant maintains a Prohibition of Harassment and Terroristic Threats policy that Mr. Marto received training on and he violated the policy by virtue of his statement to another staff member, Tiffany Cole. He admitted that he made the statement, and Ms. Cole testified that the statement frightened her. This clearly constitutes a violation of the Prohibition of Harassment and Terroristic Threats policy of Passavant. Termination of employment is the Discipline provided for in the policy for a violation. Accordingly, just cause existed for the termination of Mr. Marto's employment with Passavant Memorial Homes.

## FINDINGS AND DISCUSSION

The Grievant, Rick Marto, was terminated from his ten-year employment as a Direct Support Provider (DSP) with the Company, Passavant Memorial Homes, due to an incident occurring on July 31, 2019. Working his normal 8:00 p.m. to 10:00 a.m. shift, the Grievant's responsibilities in taking a consumer to a doctor's appointment unexpectedly did not allow him to attend a mandatory training session. It also caused him to be late for his second job as a meat cutter at a local grocery store. When discussing the scheduling problem with House Coordinator Tiffany Cole, the Grievant expressed his frustration, which included the statement "I could shoot you!" Ms. Cole found the statement inappropriate and expressed her feeling on the matter in a text shortly after the telephone call was completed. The Grievant immediately telephoned Ms. Cole to again express his apology and regret in his poor choice of words. He assured Ms. Cole that he meant her no harm.

These facts were never in dispute. When Ms. Cole reported the incident to Vice President of Human Resources Susan Weiss, the Grievant again admitted and acknowledged his poor judgment when interviewed by Ms. Weiss on August 1, 2019. Indeed, he continued to acknowledge his actions and apologize for them during his testimony at arbitration. Nevertheless, the Grievant was charged with making a terroristic threat in violation of the Company's Safety and Security policy addressing harassment and terroristic threats. The issue presented is whether his termination for this charge was for just cause.

Article IV of the Agreement provides the Company with many managerial rights in managing its operations and facilities. These rights include the right to suspend or discharge

6

Exhibit B

employees for just cause. The just cause standard places a substantial burden of proof on the employer, requiring proof of both the alleged wrongdoing by the employee and appropriate handling of the matter by the employer. The evidence of record must establish that the employee acted as charged. Once this evidentiary hurdle is cleared, the employer must then demonstrate that discipline imposed was reasonable under the circumstances. Discipline that conforms with the just cause standard is corrective rather than punitive in nature, consistent with the gravity of the offense.

The Company charged the Grievant with making a terroristic threat, in violation of its Safety and Security policy. Addressing "Prohibition of Harassment and Terroristic Threats", the policy defines a terroristic threat as follows (Joint Ex. 7):

> Terroristic threats – Any person communicates either directly or indirectly, a threat to commit any crime of violence with intent:
> - to terrorize an employee, volunteer or individual receiving services
> - cause evacuation of a building
> - cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror

The policy goes on to state that a charge of terroristic threats that is found to be valid will result in the filing of a criminal complaint and the employee's termination.

By all accounts, the Grievant's bad actions were limited to his statement "I could shoot you!" In a different context, these words would be a threat of violence. However, when placed in the context of the Grievant's actions in making the statement, immediately after making the statement, and when interviewed by Vice President Weiss the next day, it is clear that the Grievant had no intent to terrorize his co-worker Ms. Cole. The Grievant explained that the words were stated out of frustration due to the problems of scheduling two jobs. Upon learning of Ms. Cole's discomfort, he immediately apologized and telephoned her to explain himself and express his regret. While that might have been the end of the incident, Ms. Cole then reported the matter to Human Resources. When interviewed by Vice President of Human Resources Susan Weiss the next day, the Grievant again acknowledged what he said out of frustration and expressed his apology and regret.

In her testimony, Ms. Weiss acknowledged that at the interview convened on August 1, 2019, she believed the Grievant that he did not intend harm with his statement. Consistent with the language of the Company's Safety and Security Policy, without intent there is no terroristic threat.

Exhibit B

This reality was readily recognized by the local police department, which considered the matter to be an internal workplace situation and not of a criminal nature. Throughout this matter, the Grievant continued to accept responsibility, apologize, express his regret, and assure all those involved that he had no intention to harm Ms. Cole. With there being no threat of violence but only the Grievant's poor choice of words and immediate explanation and apology, there was no violation of the Company's Safety and Security Policy addressing the "Prohibition of Harassment and Terroristic Threats".

Based upon the undisputed evidence of record, it is concluded that the Grievant did not act as charged and therefore his termination was without just cause, in violation of Article IV of the Agreement. Nevertheless, while the Grievant neither intended to harm nor intended to threaten to harm Ms. Cole, his poor choice of words caused her to be concerned. Although the Grievant's statement might have been easily seen as just an expression of his frustration in the past, his words are no longer innocuous due to the numerous incidents of violence in the workplace in more recent times. To terminate a 10-year employee based on this statement, when by all indications had maintained good relationships with his coworkers is patently unreasonable, far beyond the gravity of his poor choice of words. The just cause standard requires discipline to be corrective and not punitive in nature. Given the entirety of the Grievant's actions –both the statement that he made and his immediate expressed explanation, apology, and regret – a reasonable and corrective disciplinary response is a Letter of Warning.

As a remedy in this matter, the Grievant's termination is to be rescinded and removed from his personnel file, replaced with a Letter of Warning. He is to be returned to work and made whole for all lost wages and benefits, less any interim income or loss of income benefits received. At the time of his termination, the Grievant was working a second job unrelated to his employment with the Company. Income from that secondary employment is not to be considered for purposes of the make whole award.

8

Exhibit B

## AWARD

The grievance is sustained for the reasons set forth above. The Grievant's termination is reduced to a Letter of Warning. The Company is directed to rescind the Grievant's termination and return him to work. The Grievant is awarded all lost wages and benefits resulting from his termination, less any interim income and loss of income benefits received. The undersigned shall retain jurisdiction should an issue arise in the calculation of this Award.


Jane Desimone, Esq.
Arbitrator
February 9, 2021

Exhibit B